**131 Nev., Advance Opinion 9**

IN THE SUPREME COURT OF THE STATE OF NEVADA

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF ML-CFC COMMERCIAL MORTGAGE TRUST 2007-7 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-7, BY AND THROUGH MIDLAND LOAN SERVICES, AS ITS SPECIAL SERVICER,
Appellant,
vs.
PALMILLA DEVELOPMENT CO., INC., A NEVADA CORPORATION; AND HAGAI RAPAPORT, AN INDIVIDUAL,
Respondents.

No. 62112

FILED

MAR 05 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a deficiency judgment action. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

*Reversed and remanded.*

Lewis Roca Rothgerber LLP and Joel D. Henriod, Daniel F. Polsenberg, and Robert M. Charles, Jr., Las Vegas,
for Appellant.

Deaner, Malan, Larsen & Ciulla and Brent A. Larsen, Las Vegas; Law Offices of Thomas D. Beatty and Thomas D. Beatty, Las Vegas,
for Respondents.

13- 06881

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

This case presents the question of whether NRS 40.455, which governs the award of deficiency judgments, applies when a court-appointed receiver sells real property securing a loan. More specifically, the parties dispute whether NRS 40.455(1)'s six-month filing deadline bars the mortgagee's recovery of any deficiency after such a receiver's sale when the application for a deficiency judgment is made more than six months after a purchase and sale agreement is entered into and judicial approval of said agreement is sought and given. We hold that a receiver sale of real property that secures a loan is a form of judicial foreclosure, and thus, to the extent that proceeds from such a sale are deficient, NRS 40.455 applies. We further hold that the relevant triggering event for the purposes of NRS 40.455(1)'s six-month time frame, when a receiver sale of real property securing a loan is at issue, is the date of the close of escrow rather than the date a purchase and sale agreement is formed or judicially sanctioned. And because, here, the mortgagee applied for a deficiency judgment within six months from when escrow closed on the sale in question, that application was timely. We therefore reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

*FACTS AND PROCEDURAL HISTORY*

Respondent borrower, Palmilla Development Co., took out a loan for $20.15 million from the predecessor-in-interest of appellant U.S.

Bank.[1] The loan was secured by a deed of trust on a development of townhomes and personally guaranteed by respondent Hagai Rapaport, Palmilla's president. U.S. Bank became the legal holder of the loan note and all beneficial interest under the deed of trust, following which Palmilla defaulted and Rapaport failed to fulfill his guarantor obligations. U.S. Bank then instituted the underlying action seeking to appoint a receiver in order to collect rents from, to market, and to sell the secured property.

Following the district court's approval of this request, the receiver, through a real estate marketing company, listed the subject property and, over the course of several months, obtained 31 offers to purchase the property. From these offers, the receiver identified what it believed to be the best offer and entered into a purchase and sale agreement with that third-party purchaser for $9.5 million on February 5, 2010. U.S. Bank filed a motion to approve the sale, which the district court granted on March 26, 2010. Escrow closed on June 7, 2010, when the purchaser paid the agreed upon price and obtained the deed to the property.

On November 24, 2010, U.S. Bank filed an amended complaint, which sought to recover the amount of Palmilla's indebtedness that the net proceeds of the receiver sale did not satisfy. Respondents filed a motion for summary judgment, arguing that the relief sought in the

---

[1]The appellant's full name is listed as U.S. Bank National Association, as trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-7 Commercial Mortgage Pass-Through Certificate Series 2007-7, by and through Midland Loan Services, as its Special Servicer.

amended complaint was, in essence, an application for a deficiency judgment under NRS 40.455(1), which U.S. Bank was precluded from seeking because (1) the receiver sale was not a "foreclosure sale or trustee's sale held pursuant to NRS 107.080," and absent either of those two types of sales, NRS 40.455(1) does not permit a deficiency judgment; and (2) even if NRS 40.455(1) could be used to seek a deficiency judgment following a receiver sale of real property securing a loan, U.S. Bank failed to comply with the section's time frame for so seeking. The district court granted respondents' motion, holding that, although U.S. Bank could utilize NRS 40.455(1) to seek a deficiency judgment following a receiver sale of real property securing a loan, U.S. Bank had to abide by NRS 40.455(1)'s six-month time frame in so doing, and that more than six months had passed between the date U.S. Bank filed its amended complaint and the date the district court approved the purchase and sales agreement. This appeal followed.

## DISCUSSION

*A receiver sale of real property securing a loan is a "foreclosure sale" within the meaning of NRS 40.455(1)*

U.S. Bank's appeal raises questions of statutory interpretation; our review is, therefore, de novo. *Pankopf v. Peterson*, 124 Nev. 43, 46, 175 P.3d 910, 912 (2008). As relevant to this appeal, NRS 40.455(1) states that

> [U]pon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of *the foreclosure sale or the trustee's sale held pursuant to NRS 107.080*, respectively, and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of

consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

NRS 40.455(1) (emphasis added). As a preliminary matter, we must determine whether this section applies when the deficiency application in question is brought following a receiver sale of real property securing a loan. And, because we agree with respondents that NRS 40.455(1) only applies when there is a deficiency in the proceeds of a "foreclosure sale or [a] trustee's sale held pursuant to NRS 107.080," we therefore must resolve whether a receiver sale of real property securing a loan qualifies as either.

We reject outright the proposition that such a sale is a "trustee's sale held pursuant to NRS 107.080." NRS 107.080 confers upon a trustee the "power of sale" in a nonjudicial foreclosure proceeding, wherein, it is almost so intuitive as to go without saying, "[n]o judicial proceeding is required." Restatement (Third) of Property (Mortgages) § 8.2 cmt. a (1997). But, in the context of receiver sales of real property securing a loan, a court "in which an action is pending" appoints the receiver in question, NRS 32.010(2), and thus, involvement of the judicial machinery in such circumstances is clearly contemplated. Indeed, as is evident from this court's recitation of the facts, here U.S. Bank's initiation of a judicial proceeding prompted the sale in question, and judicial approval of the purchase price was required, sought, and given. Inasmuch as the requirements in power of sale statutes like NRS 107.080 are only intended to ensure that "the mortgagee accomplishes the same purposes achieved by judicial foreclosure without the substantial additional burdens that the latter type of foreclosure entails," Restatement (Third) of Property

(Mortgages) § 8.2 cmt. a (1997), their application in circumstances, such as these, where the judicial process is invoked would be needlessly duplicative. We therefore cannot accept a reading of NRS 40.455(1) that includes a receiver sale of real property securing a loan as a "trustee's sale held pursuant to NRS 107.080." NRS 40.455(1); *J.E. Dunn Nw., Inc. v. Corus Constr. Venture, LLC*, 127 Nev. ___, ___, 249 P.3d 501, 505 (2011) (noting that this court's interpretations should avoid absurd results).[2]

This leaves only the former prospect, that is, that a receiver sale of real property securing a loan is a "foreclosure sale" within NRS 40.455(1)'s meaning. NRS 40.455 does not define "foreclosure sale," but a different section in the same subchapter does. In particular, NRS 40.462(4) defines the phrase as "the sale of real property to enforce an obligation secured by a mortgage or lien on the property, including the exercise of a trustee's power of sale pursuant to NRS 107.080." Likewise, *Black's* defines a foreclosure sale as "[t]he sale of mortgaged property, authorized by a court decree or a power-of-sale clause, to satisfy the debt." *Black's Law Dictionary* 1455 (9th ed. 2009). But, to the extent that NRS 40.455(1) bifurcates "foreclosure sale[s]" from nonjudicial trustees' sales held pursuant to NRS 107.080, within the section's confines, "foreclosure sale" must mean, more limitedly, only the former type of sale—namely, a sale of real property held to enforce an obligation secured by a mortgage or lien, other than those trustee's sales authorized by NRS 107.080.

---

[2]Because such receiver sales are not "held pursuant to NRS 107.080," any failures alleged by respondents of U.S. Bank to meet NRS 107.080's requirements are beside the point.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

A sale directed by a court-appointed receiver plainly falls within this definition. Pursuant to NRS 32.010(2), the statute under which the instant receiver was appointed, a court may appoint a receiver

> ... [i]n an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.

Inasmuch as NRS 32.010(2) states that a receiver may be appointed "in an action by a mortgagee for the foreclosure of the mortgage," it plainly envisages that a receiver sale of real property securing a loan is one of foreclosure. Indeed, the request for receiver under the section is only ancillary to such a sale. *See* 2 Baxter Dunaway, *The Law of Distressed Real Estate* § 16:32 (2014). And as this court has previously recognized, any property "[e]ntrusted to [a receiver's] care is regarded as being *in custodia legis*"; put differently, "the court itself [has] the care of the property by its receiver." *Bowler v. Leonard*, 70 Nev. 370, 383, 269 P.2d 833, 839 (1954) (internal quotations omitted). Even further, a receiver is merely the court's "creature or officer, having no powers other than those conferred upon him by the order of his appointment." *Id.* (internal quotations omitted). Thus, real property that secures a loan and is sold in a receiver sale is undoubtedly "sold through a court proceeding" inasmuch as the receiver, for all intents and purposes, acts as a court's proxy, facilitating the sale of property in the appointing court's care and only with its approval. *See id.*; *see also Campbell v. Parker*, 45 A. 116, 118 (N.J. Ch. 1900) ("[I]f a sale by a sheriff, by virtue of a writ directed to him by this court, is a judicial sale, a fortiori one made by a receiver, who is

appointed by this court, and who is in a sense an arm of the court, and, so to speak, a part of it, is also a judicial sale."); Dunaway, *supra*, § 16:32 (identifying a receiver sale as a method of judicial foreclosure); 2 *Clark on Receivers* § 482 (3d ed. 1959) ("A receiver's sale is a judicial sale.").

In light of the strength of this reasoning, we reject respondents' arguments that a receiver sale of real property securing a loan is not a form of judicial foreclosure sale because, as occurred here, the property may not be sold at a public auction, *cf.* NRS 40.430(4) (indicating that a judicial foreclosure sale "must be conducted in the same manner as the sale of real property upon execution, by the sheriff"); NRS 21.150 (indicating that "[a]ll sales of property under execution shall be made at auction to the highest bidder"), or because there may be instances where, as here, no "judgment" is entered prior to the sale. Such arguments unnecessarily elevate form over substance. We therefore hold that a receiver sale of real property securing a loan is a "foreclosure sale" within the meaning that NRS 40.455(1) ascribes to the phrase.

*NRS 40.455(1)'s six-month time frame was satisfied in the instant action*

Thus having determined that NRS 40.455(1) governs actions for deficiency judgments following a receiver sale of real property securing a loan, we turn to the question of whether NRS 40.455(1), which requires an application for a deficiency judgment to be made "within 6 months after the date of the foreclosure sale," offers any relief to the respondents in the instant case. Specifically, respondents argue that U.S. Bank's filing for deficiency on November 24, 2010, was untimely pursuant to NRS 40.455(1), because the date of the "foreclosure sale" fell either on February 5, 2010, when the receiver entered into the purchase and sale agreement

with the third-party purchaser or, at the very latest, March 26, 2010, the date when the district court approved the sale.

When the sale in question is a trustee's sale conducted pursuant to NRS 107.080, this court has held that the date of the sale for the purposes of NRS 40.455(1)'s time frame is that on which the auction was conducted. *Sandpointe Apartments, LLC v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 313 P.3d 849, 856 (2013); *Walters v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 263 P.3d 231, 234 (2011). But the transaction that we presently consider was orchestrated pursuant to the method of judicial foreclosure sanctioned by NRS 32.010, not NRS 107.080. When a sale is conducted pursuant to NRS 107.080, it makes sense that the close of the auction triggers the start of NRS 40.455(1)'s time frame—the winning bidder typically pays the bid price at the auction's conclusion. *See Roark v. Plaza Sav. Ass'n*, 570 S.W.2d 825, 830 (Mo. Ct. App. 1978) ("The trustee must be able to exercise discretion in requiring bidders to satisfy him that they will be able to pay their bid in cash."); 2 Michael T. Madison, et al., *Law of Real Estate Financing* § 12:57 (2014) (collecting cases and noting that the trustee has discretion to require bidders to prove their ability to immediately pay the bid price). But, as discussed above, in the context of receiver sales of property securing a loan, an element of judicial review and approval is added separate and apart from any requirements that NRS 107.080 places on trustee's sales such that payment is not immediately made when a contract for purchase and sale is formed. Thus, other jurisdictions have reasoned that, where such judicial review and approval is mandated, a prospective purchaser's submission of the highest bid is merely an irrevocable offer to purchase, and have rejected the idea that any right to

SUPREME COURT
OF
NEVADA

(O) 1947A

9

deficiency judgment vests by virtue of the seller's acceptance of said offer alone. *See, e.g., Leggett v. Ogden,* 284 S.E.2d 1, 3 (Ga. 1981); *Commercial Credit Loans, Inc. v. Espinoza,* 689 N.E.2d 282, 285 (Ill. App. Ct. 1997). We likewise hold that the receiver's mere entry into an agreement with a prospective purchaser in a receiver sale of real property securing a loan does not commence NRS 40.455(1)'s applicable six-month time frame.

Neither, in our view, does the date that judicial approval is given begin NRS 40.455(1)'s time frame in the context of such a receiver sale. It has been said that a judicial foreclosure sale is not "legally complete or binding until the purchaser has actually paid the amount bid." *In re Grant,* 303 B.R. 205, 210 (Bankr. D. Nev. 2003) (internal citations omitted); *see Matter of Kleitz,* 6 B.R. 214, 218 (Bankr. D. Nev. 1980). Prior to that time, if the court becomes satisfied that the purchaser will not or cannot pay the bid amount, the property must be re-advertised and re-sold. *See Dazet v. Landry,* 21 Nev. 291, 293-94, 30 P. 1064, 1066 (1892), *criticized on other grounds by Golden v. Tomiyasu,* 79 Nev. 503, 512, 387 P.2d 989, 993 (1963). Accordingly, in the context of receiver sales of real property securing loans, even after the sale has received judicial sanction, the mortgagee has no certainty as to whether that sale will come to fruition and thus cannot be sure of the existence of any deficiency resulting therefrom. It is this assurance of a recoverable deficiency's existence that triggers a mortgagee's opportunity to seek it and commences the applicable six-month limitations period, *see Sandpointe,* 129 Nev. at ___, 313 P.3d at 856 ("The trustee's sale marks the first point in time that an action for deficiency can be maintained and commences the

Supreme Court
of
Nevada

(O) 1947A

10

applicable six-month limitations period."), and therefore, we hold that in the context of receiver sales of real property securing loans, it is not until the actual exchange of money, the close of escrow, that NRS 40.455(1)'s six-month time limit begins.

To be clear, we do not abrogate or overrule *Sandpointe*, only clarify that when a receiver conducts a sale of real property securing a loan, NRS 40.455(1) applies, and the triggering event for NRS 40.455(1)'s time frame is the date that escrow closes and payment is made. Given that, here, less than six months had elapsed between the payment of funds on June 7, 2010, and U.S. Bank's application for a deficiency judgment on November 24, 2010, U.S. Bank complied with NRS 40.455(1)'s requisite time frame. The district court therefore erred in granting summary judgment on those grounds; we reverse and remand for proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, C.J.
Hardesty

_____, J.
Cherry